[No. 28035. *En Banc.* October 10, 1941.]

SANNA D. ADAMS, *Respondent,* v. CHARLES F. ERNST, *as Director of the State Department of Social Security, et al., Appellants.*[1]

[1]Reported in 117 P. (2d) 755.

*The Attorney General* and *Harry L. Parr, Assistant* (*T. B. Asmundson,* of counsel), for appellants.

*Frank L. Cathersol,* for respondent.

DRIVER, J.—The history of the old age assistance claim which is the subject of this appeal may briefly be summarized as follows:

Sanna D. Adams was granted an allowance of twenty dollars a month, beginning October 1, 1936, under chapter 182, Laws of 1935, p. 855 (Rem. Rev. Stat. (Sup.), § 9998-1 [P. C. § 6233-151] *et seq.*). The grant was canceled as of September 1, 1938, by the Pierce county welfare administrator on the ground that the claimant's daughter and son-in-law, with whom she lived, were financially able to provide for her. This action was affirmed by the supervisor of the division of old age insurance, but the director of the state department of social security concluded that Mrs. Adams' relatives were able to give her only partial support, and granted her assistance in the amount of fourteen dollars a month.

Prior to that time, the 1935 act above cited had been amended in some particulars by chapter 156, Laws of 1937, p. 548. The claimant appealed from the decision of the director to the Pierce county superior court, which orally announced its decision in her favor at a hearing held on February 21, 1939. But findings, conclusions, and judgment were not entered until after February 25, 1939, the effective date of another statute amending the old age assistance act, namely, chapter 25, Laws of 1939, p. 80. Mrs. Adams was adjudged

entitled to thirty dollars a month from and after July 1, 1937, and the social security director was ordered to pay the deficiency due her in the total sum of three hundred and six dollars.

The judgment of the superior court was reversed on appeal to this court in *Adams v. Ernst,* 1 Wn. (2d) 254, 95 P. (2d) 799. We held that Mrs. Adams had no vested right in any unpaid installments of old age assistance, which she claimed had become due under the 1935 and 1937 statutes; and, since no judgment was entered by the superior court prior to the enactment of the 1939 amendatory act, her claim should have been determined in accordance with the provisions of that act.

The purpose of the present action was to secure such determination. It was initiated subsequent to the entry of the lower court's judgment in the prior case. Following a hearing before the department of social security on June 13, 1939, Mrs. Adams' assistance award was again fixed at fourteen dollars a month. The amount was based upon an itemized budget of her needs. However, as she was rated as the third adult member of her married daughter's family, no budgetary allowance was made for her lodging. Once more, the claimant appealed to the Pierce county superior court. That court reversed the decision of the social security director and found and adjudged that, in Mrs. Adams' case, " . . . the basic old age assistance eligibility budget for the first adult, as provided by the rules of the State Department of Social Security, . . . " should be applied. The director and the state appealed.

The appeal presents this controlling question: Under the provisions of the 1939 amendatory statute, was the respondent entitled to a budgetary allowance sufficient to cover all her living expenses, including

lodging, even though the latter was being furnished by her relatives?

The facts which have a material bearing on that question are not in dispute. At the time of the hearing below, the respondent had all the requisite statutory qualifications for old age assistance. She then was, and for many years had been, making her home with her daughter and son-in-law. After the state awarded her fourteen dollars a month on February 1, 1939, she contributed eight to ten dollars a month toward the household food expense, but paid nothing for her lodging. At a hearing before the department of social security on November 18, 1938, both her daughter and her son-in-law had testified that, because of their own necessitous circumstances, they could no longer provide for the respondent unless she received financial assistance from the state with which to pay her way. At the hearing before the department on June 13, 1939, however, neither the daughter nor the son-in-law testified. The respondent, on cross-examination, stated at that time:

"Q. Are you expected to pay room rent in addition to paying for your food? A. Well of course they would like it. Of course they would. Q. Have they ever asked you to make any special payment for your room? A. Why no, they can't say anything while I am only getting $14.00. They know I couldn't pay for any room rent out of that much money, but I should be paying it and of course they would like to have me pay it. It isn't very easy for my daughter the way it is. Q. They are willing to let you stay there, however, as long as you pay for your share of the food, are they not? A. Well yes, I suppose so. The way it is now I am sure of food but it isn't very pleasant. I am a mother and it isn't very pleasant."

It thus appears that although the situation entailed some inconvenience and hardship on both sides, yet the respondent was receiving lodging in her daughter's

home, and that such assistance was voluntarily given and voluntarily accepted.

The pertinent provisions of the 1939 statute, to which we shall presently refer, should be considered in the light of a decision of this court which preceded, and, it seems reasonable to assume, in substantial measure, influenced their enactment, namely, *Conant v. State*, 197 Wash. 21, 84 P. (2d) 378. There, an applicant, qualified as to age, residence, and lack of property or income to receive old age assistance, claimed it as a matter of right under the law as it existed after the enactment of the 1937 amendatory act, despite the admitted fact that she was receiving all the necessities of life from a daughter and a son-in-law financially able and willing to support her. This court held that, since she possessed the qualifications specifically prescribed by the statute, the claimant was "in need" in contemplation of law, and, under the circumstances just stated, was eligible to old age assistance.

The *Conant* case was decided November 18, 1938. At its next session, which convened in January, 1939, the legislature enacted chapter 25, Laws of 1939, p. 80. Section 1 of the amendatory act (Rem. Rev. Stat. (Sup.), § 9998-1a [P. C. § 6233-151a]) was a new section, the first sentence of which read as follows:

"DECLARATION OF INTENT. The legislature hereby expressly declares its intent to be that the old age assistance authorized to be granted to individuals by chapters 156 and 180, Laws of 1937, or their antecedent acts, *shall not be available to persons as a matter of right* but rather that such old age assistance shall be available only to persons who are *in need* thereof *as that term is hereinafter in this act defined.*" (Italics ours.)

Section 2 of the 1939 act (Rem. Rev. Stat. (Sup.), § 9998-4 [P. C. § 6233-154]) amended § 4, chapter 182, Laws of 1935, as amended by § 2, chapter 156, Laws of

1937.  However, the prior law was amended only by the omission of the words shown in italics and by the addition of the words placed in brackets in the following quoted portion of § 4:

"The amount and nature of old age assistance which any such person shall receive, and the manner of providing it, shall be determined by the said department with due regard to the conditions existing in each case; but such assistance together with the applicant's *own* resources *and income* [as defined in this act] shall not *be less than* [exceed] the sum of thirty dollars ($30) per month to each recipient:  . . . "

Section 3 of the 1939 act (Rem. Rev. Stat. (Sup.), § 9998-7a [P. C. § 6233-154a]), which was also a new section, provided, in part, that:

"Old age assistance shall be granted *only* to such persons as are *in need*.  A person shall be considered to be *in need* within the meaning of this act who does not have *resources* sufficient to provide himself and dependents with food, clothing, shelter and such other items as are necessary to sustenance and health.  'Resources' are hereby defined to be (1) *assistance* in cash, in kind, or *in support given by relatives,* friends or organizations, (2) ability of relatives within the classes described in this section to contribute to such support:  *Provided,* That where such relative or relatives shall refuse to so contribute such officer may, in his discretion and upon written findings of fact filed by him, determine that ability of a relative or relatives to so contribute shall not constitute a resource sufficient to render the applicant ineligible to assistance  . . .

"The *amount of assistance* to be granted in each individual case shall be determined on a *budgetary basis,* taking into account the *need* of the applicant and his dependents and *the resources of the applicant* and of persons responsible for care of the applicant. . . . "   (Italics ours.)

■   It seems too apparent to require much comment that, when the legislature enacted the quoted provi-

sions of the 1939 act, it intended to change the prior law, as construed in the *Conant* case, so as to make support furnished by relatives a resource to be considered in determining the amount of assistance an applicant for old age assistance was entitled to receive. In the present case, the respondent was receiving "support" consisting of lodging "given by relatives," and that fact was properly taken into account by the department of social security in making up the budget of her needs. The decision of the director of the department correctly construed and applied the governing provisions of the 1939 amendatory statute, which were then in force, and the judgment of the superior court must be reversed.

ROBINSON, C. J., MAIN, BEALS, STEINERT, BLAKE, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—If respondent's daughter were unmarried, the legal liability might, possibly, be imposed upon the daughter to contribute to the support of her mother and such support would be, under the statute (Laws of 1939, chapter 25, p. 80), "resources" to be considered in the determination of the amount of assistance to be granted to aged persons; since, however, the daughter is married, the payment which might be required of the daughter, if single, can not be collected out of community property of the daughter and the daughter's husband.

In *Conant v. State*, 197 Wash. 21, 84 P. (2d) 378, an applicant claimed, as a matter of right, under the then existing old age assistance statutes, assistance in spite of the fact that a daughter and son-in-law financially able and willing to support her contributed to that applicant all the necessities of life. We held that the applicant was "in need" under the statutes and was entitled to receive old age assistance. That case was

decided November 18, 1938. At the next session of the legislature, which convened in January, 1939, chapter 25, Laws of 1939, p. 80, was enacted. Under that statute, old age assistance was limited to persons who were in need as defined in that statute. Under the 1939 statute, support given by relatives, friends, or organizations, and ability of adult sons and daughters to contribute to the support of an aged parent were to be considered as resources in the determination of the question whether a person was "in need."

In no part of chapter 25, Laws of 1939, is there any language from which it may be implied that a son-in-law could be required to contribute to the support of his mother-in-law. The very fact that the statute names the son and daughter as relatives and excludes sons-in-law, daughters-in-law, and others clearly manifests the legislative intent that a son-in-law was not to be required to contribute to the support of his mother-in-law. There is no intention, expressed or implied, that the payment which could be required by the statute of the daughter could be collected from community property.

Doubtless, as stated in the majority opinion, the legislature enacted Laws of 1939, chapter 25, to change the prior law as construed by us in *Conant v. State, supra,* so as to make support furnished by relatives a resource to be considered in determining the amount of assistance an applicant for old age assistance was entitled to receive. It must be remembered, however, that, while an unmarried daughter may be required, if able, to contribute to the support of her mother, there is no statute which requires the husband of that daughter to contribute to the support of his mother-in-law; nor is there any language in the statute from which it may be implied that the mother is entitled to support from the community property of her daughter and the daughter's husband.

The people of this state, by initiative measure No. 141, chapter 1, Laws of 1941, p. 3, adopted as the law our construction of chapter 182, Laws of 1935, p. 855, and chapter 156, Laws of 1937, p. 548, in *Conant v. State, supra,* as a correct interpretation of those statutes; and the people by initiative measure No. 141, chapter 1, Laws of 1941, repealed chapter 25, Laws of 1939, which had been passed by the legislature in 1939 to render of no effect our opinion in *Conant v. State, supra.* Initiative measure No. 141, chapter 1, Laws of 1941, was passed by the people to redress what they considered existing grievances and for the protection of rights which they deemed they had under the old age assistance statutes considered by us in *Conant v. State, supra,* and, as the people declared in the initiative measure itself, that act of legislation by the people must be interpreted liberally.

Chapter 25, Laws of 1939, viewed in the light of initiative measure No. 141, chapter 1, Laws of 1941, and the history in this state of old age assistance legislation, can lead to no other logical conclusion, in my mind, than that the legislature did not intend to charge a son-in-law with the support of his mother-in-law, and that the legislature did not contemplate the imposition of the burden of support of the mother upon a married daughter, which would require contribution from community property of the daughter and the daughter's husband.

The judgment should be affirmed.

SIMPSON, J., concurs with MILLARD, J.